IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIM WEBB, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>WILSON COUNTY BOARD OF EDUCATION, )<br>)<br>    Defendant. ) | Case No. 3:05cv0214<br><br>Judge Thomas A. Wiseman, Jr. |

**MEMORANDUM OPINION**

    Plaintiff Kim Webb filed this action against Defendant Wilson County Board of Education ("WCBE"), initially alleging unlawful racial and sexual discrimination in violation of 42 U.S.C. § 1983, the 14th Amendment to the United States Constitution, and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-401 to

-408 ("THRA"); and alleging unlawful discrimination and retaliation in violation of 20 U.S.C. § 1681 ("Title IX"). WCBE has filed its Motion For Summary Judgment (Doc. No. 20) along with a supporting Memorandum Of Law (Doc. No. 23), Statement Of Undisputed Material Facts (Doc. No. 22), and various supporting exhibits and affidavits. Ms. Webb has filed her Response To Defendant's Statement Of Undisputed Material Facts (Doc. No. 27) and Memorandum In Opposition To Defendant's Motion For Summary Judgment (Doc. No. 26), in which she apparently abandons her § 1983 and 14th Amendment claims. She maintains, however, that material issues of disputed fact preclude summary judgment of her Title IX and THRA claims.

    Based upon Ms. Webb's concessions, the Court will grant summary judgment in favor of WCBE and dismiss the § 1983 and constitutional claims. In addition, as discussed below, the Court finds that WCBE has not established that it is entitled to Eleventh Amendment sovereign immunity for purposes of the THRA claim. However, because Ms. Webb has failed to establish a *prima facie* case of discrimination or retaliation under either Title IX or the THRA, WCBE is entitled to summary judgment of those claims as well.

**II. STANDARD OF REVIEW**

    Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact

and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment will not lie if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Matsushita, 475 U.S. at 587; Wade v. Knoxville Utils. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.' " Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Liberty Lobby, 477 U.S. 242, 249). If, however, the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmoving party has the burden, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537–38 (6th Cir. 1999).

To preclude summary judgment, the nonmoving party "is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." Gaines v. Runyon, 107 F.3d 1171, 1174–75 (6th Cir. 1997). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 252). Thus, the court should also consider whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Amway Distribs. Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Liberty Lobby, 477 U.S. at 251–52). If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative" or enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Liberty Lobby, 477 U.S. at 249–52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment

2

inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citations omitted).

## II. FACTUAL BACKGROUND

Lebanon High School is a public high school located in Wilson County, Tennessee and operated under the direction of the defendant, WCBE. Ms. Webb, an African-American woman, was employed as a physical education teacher at Lebanon High School from 1995 until her resignation in February 2005. Ms. Webb was tenured at the time of the events giving rise to these proceedings. At that time, there were three other physical education teachers at Lebanon High School besides Ms. Webb. All three were male; one was black and two were white.

Ms. Webb taught physical education to both boys and girls in co-educational classes at Lebanon High School. The physical education curriculum at Lebanon High School, actually called "Lifetime Wellness," includes a sports component, a wellness component, and a health component. As a physical education teacher, Ms. Webb was qualified to teach each of the various components of the Lifetime Wellness curriculum. Ms. Webb testified that beginning with her second year at Lebanon High School up through December 2004, she devoted an equal amount of class time over the course of the semester to each component of the curriculum. She taught three classes per day with one planning period.

Ms. Webb described the wellness component of the curriculum as involving cardiovascular activities, as opposed to the game-type sports, such as basketball, volleyball and whiffleball, that made up the sports or play component. The health component did not involve physical activity and was generally taught in a classroom, though Ms. Webb testified that, until the 2005 spring semester, she taught her health classes in the gymnasium. Randy Vanatta, head of the physical education department and long-time teacher at Lebanon High School, similarly described the Lifetime Wellness curriculum as including an "exercise portion," "play portion," and "health portion." Mr. Vanatta testified that, for many years, through Ms. Webb's first year of teaching at Lebanon High School, he "was in the classroom all day long teaching nothing but health." The practice was changed shortly after Ms. Webb's arrival, allegedly at Ms. Webb's suggestion, such that all of the physical education teachers taught all three components of the curriculum.

At Lebanon High School, there are two gymnasiums; one is referred to as the "big gym," which is where all the school basketball games are played and school assemblies are held, and the other is referred to as the "little gym." Ms. Webb's office was inside the girls' locker room, which was off of the little gym. The

3

boys' locker room was in the big gym. Ms. Webb was assigned to teach classes primarily in the little gym; she taught one class in the big gym during her entire tenure at Lebanon High School.

According to Ms. Webb, the girls' locker room facilities are significantly inferior to the facilities in the boys' locker room, and the little gym in which she taught most of her classes was not adequately cleaned or maintained, particularly in comparison with the big gym, which was always freshly painted and immaculate. Although Ms. Webb alleged in her complaint that she taught classes to girls only in the little gym, to which she referred in her complaint as the "girls' gym," Ms. Webb admitted in her deposition that she taught both boys and girls in her classes, and that the smaller gym is called the "little gym," not the "girls' gym." At any rate, Ms. Webb alleges that, beginning early in the fall of 2004, she began to complain insistently to school officials about the conditions in the little gym and the girls' locker room. For instance, she complained about the sewer backing up in the girls' locker room several times; mold on the ceiling tiles in her office, on the ceiling of the locker room, and in the hallway leading to the locker room; and peeling paint, leaking pipes, and rotting floors in the little gym. She also states that the heat was not working in the little gym and that she complained about it numerous times in October, November and December 2004 before the problem was finally addressed. When Ms. Webb complained about these problems to the school principal Don Hassler, he allegedly said, "the students are only in there for an hour and a half." Ms. Webb does not indicate that these problems were not addressed, however, though she maintains they were not addressed quickly or effectively enough. She stated that, when she complained about a problem, it might be weeks before it was addressed, but if one of the white, male teachers complained, the problem was addressed immediately. Ms. Webb could only identify one specific such instance, however: She alleged that once when the heat was not working in the big gym, it was repaired within twenty minutes after Randy Vanatta complained about it.

Ms. Webb missed thirty days of work during the 2001–2002 school year; forty-five days during the 2002–2003 school year; thirty-six days during the 2003–2004 school year, and forty-four days during the first two-thirds of the 2004–2005 school year. According to Ms. Webb, her absences resulted from chronic sinusitis and other health problems that were caused by the filthy condition of the little gym and the girls' locker room facilities at Lebanon High School. Ms. Webb told school officials beginning in the fall of 2004 that she believed her health problems were related to the unsatisfactory condition of the area where she worked.

4

Don Hassler, Principal at Lebanon High School, testified that, in response to Ms. Webb's complaints, he saw to it that the girls' locker room was cleaned; a new ventilation system was installed; a new floor and new ceiling were installed in Ms. Webb's office; the walls of the locker room were painted; and a new air conditioner unit was installed on an exterior wall in Ms. Webb's office so that she could control the ventilation and climate in her office. The little gym was thoroughly cleaned at the same time. All these improvements were performed during the school's Fall Break in October 2004. Ms. Webb does not dispute these efforts on the part of the school. In addition, while Mr. Hassler agreed that sewer back-up into the girls' locker room had been a problem a couple of times, he also testified that the entire sewer line was replaced during the 2003–2004 school year.

Despite the school's efforts to clean up the little gym and the girls' locker room, Ms. Webb's health problems and attendance record did not improve during the second half of the first semester of the 2004–2005 school year. Mr. Hassler announced to Ms. Webb in December 2004 his decision to have Ms. Webb teach exclusively the health component of the physical education curriculum, in the newer part of the school building rather than in the gymnasium, to have her away from the area she felt was making her sick, in order to see if her health and attendance record improved as a result. Mr. Hassler testified specifically that the re-assignment was not intended as a punishment of any kind and had nothing to do with Ms. Webb's race or gender. Instead, the move was intended as an accommodation that would permit Ms. Webb to remain a part of the Lebanon High School faculty. Ms. Webb's job responsibilities were changed beginning with the spring 2005 semester. Instead of teaching the entire Lifetime Wellness curriculum, she taught classroom-based health classes "full time." Instead of being in the gym, she taught in three different classrooms upstairs in the high school. Her salary and benefits were not reduced, nor did she teach fewer classes or fewer students than before, but she had no office and no computer, and had to use a cart to transfer her books from classroom to classroom. According to Mr. Hassler, Ms. Webb was nonetheless absent a significant number of days during the first part of the 2005 spring semester prior to submitting her resignation.

Ms. Webb resigned her teaching position at Lebanon High School on February 11, 2005. She was not fired or forced to leave, but felt she had to resign because of the conditions under which she was working. The school offered for her to take an extended leave of absence during the spring of 2005, which Ms. Webb declined.

5

## III.    DISCUSSION AND ANALYSIS

### A.    Whether Plaintiff's Claims Against WCBE Are Barred By the 11th Amendment

In its Memorandum in support of its motion for summary judgment, WCBE argues that Ms. Webb's racial discrimination claims under the THRA are barred by the doctrine of sovereign immunity because WCBE is a "political subdivision" of the State of Tennessee. (Doc. No. 23, at 10.) Ms. Webb did not respond to this argument. Because this question goes to the Court's exercise of jurisdiction, it is addressed first.

The Eleventh Amendment provides: "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although the Amendment does not expressly address the federal courts' jurisdiction over suits against a state by one of its own citizens, it has been interpreted to preclude such suits as well. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Hans v. Louisiana, 134 U.S. 1 (1890). "Absent waiver, neither a State nor agencies acting under its control may be 'subject to suit in federal court.'" Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) (quoting Welch v. Tex. Dep't of Highways and Pub. Transp., 483 U.S. 468, 480 (1987)). Thus, two questions must be answered positively in order to establish that sovereign immunity applies in this case: First, is WCBE a state agency covered by the state's grant of sovereign immunity? Second, if so, has that immunity has been waived? Cf. Boyd v. Tenn. State Univ., 848 F. Supp. 111, 113 (M.D. Tenn. 1994) (citing Estate of Ritter v. Univ. of Mich., 851 F.2d 846, 848 (6th Cir. 1988)).

Generally speaking, the protection of the Eleventh Amendment does not extend to counties and similar municipal corporations and political subdivisions of the state. See Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977) (finding that the local school board petitioner was "more like a county or city than . . . like an arm of the State," and therefore holding that it was not entitled to Eleventh Amendment immunity). Notwithstanding, "[t]he touchstone of sovereign immunity applicability is whether a successful action against a defendant would require tapping into the state's treasury for payment of the judgment; if so, then the state is taken to be the real defendant in interest and the action is barred by the Eleventh Amendment—absent waiver." Boyd, 848 F. Supp. at 113–14; Estate of Ritter, 851 F.2d at 850 (noting that the most important factor in determining Eleventh Amendment immunity is "whether a judgment, if obtained,

6

would be paid out of the state treasury"). Consequently, the issue presented here is whether a judgment against the Wilson County Board of Education would have "essentially the same practical consequences as a judgment against the State itself." Orange v. County of Grundy, 950 F. Supp. 1365, 1374 (E.D. Tenn. 1996) (quoting Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency, 440 U.S. 391, 400–01 (1979)).

In Orange v. County of Grundy, the district court was called upon to determine whether the Grundy County Board of Education was a state agency subject to Eleventh Amendment immunity. The defendants argued that local boards of education are "integral parts of the state's education system and are therefore entitled to its Eleventh Amendment immunity." Orange, 950 F. Supp. at 1374. The court, while recognizing that "[c]ounty school boards in the State of Tennessee are both creatures of the state and the county they serve," nonetheless found that there was not sufficient evidence before it to determine whether a judgment for monetary damages against the Grundy County Board of Education would come out of state coffers. Id. On that basis, the court denied the Board's motion for summary judgment on the basis of Eleventh Amendment immunity. Id.

Here, WCBE has not presented any evidence regarding the source of funds that would be used to pay a money judgment against it, nor any other evidence in support of its claim of immunity. It merely states, in a conclusory manner, that WCBE is a political subdivision of the state, that it is administered by individuals who are responsible to the general public, and that WCBE is an "Administrative board" of the State of Tennessee. Even assuming these averments are undisputed, none establishes the financial structure of the school board or the source of funds that would be used to pay a judgment. The Court therefore finds that there is at least a disputed issue of fact as to whether WCBE is entitled to sovereign immunity, so it is not entitled to summary judgment of the THRA claim on that basis. Cf. Creager v. Bd. of Educ. of Whitley County, Ky., 914 F. Supp. 1457 (E.D. Ky. 1996) (holding that county board of education was not an arm of the state entitled to Eleventh Amendment immunity). Because entitlement to immunity is not established, the Court does not reach the question of waiver.

### B. Plaintiff's Discrimination Claims Under Title IX and the THRA

Title IX of the Educational Amendments of 1972, codified at 20 U.S.C. § 1681, provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal

7

financial assistance." 20 U.S.C. § 1681(a). The Supreme Court ruled over twenty years ago that Title IX implies a private cause of action for discrimination, see Cannon v. Univ. of Chicago, 441 U.S. 677, 717 (1979), and, although the Supreme Court has specifically reserved the question of whether Title IX employment discrimination claims should be governed by the same principles applicable to Title VII actions, see Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 65 n.4 (1992), most courts that have addressed the question, including the Sixth Circuit, have indicated that Title VII principles should be applied to Title IX actions. See Ivan v. Kent State Univ., 92 F.3d 1185, 1996 WL 422496, at *2 (6th Cir. July 26, 1996) (per curiam); Arceneaux v. Vanderbilt Univ., No. 00-5691, 25 Fed. Appx. 345, 346–47 (6th Cir. Dec. 28, 2001).

Likewise, because the "stated purpose and intent of the [THRA] is to provide for execution within Tennessee of the policies embodied in the federal civil rights laws," the analysis of race and sex discrimination claims under the THRA is the same as under Title VII. Campbell v. Fla. Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996); see also Tenn. Code Ann. § 4-21-101(a) ("It is the purpose and intent of the general assembly by this chapter to . . . [p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968, and 1972. . . ."); Wade v. Knoxville Utils. Bd., 259 F.3d 452, 464 (6th Cir. 2001). Accordingly, the analysis of Ms. Webb's Title IX discrimination claim applies to her THRA discrimination claim as well.

Under the McDonnell Douglas framework, a plaintiff/employee seeking to establish a claim of discrimination must first prove a *prima facie* case of discrimination. Tex. Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). The employee may establish a *prima facie* case of discrimination either by presenting direct evidence of intentional discrimination by the defendant, or by showing the existence of facts which create an inference of discrimination." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1248 (6th Cir. 1995) (internal citations omitted). Where, as here, no direct evidence of discrimination is available, the plaintiff may establish her *prima facie* case of discrimination with indirect, circumstantial evidence by showing that (1) she was a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) "a comparable non-protected person was treated better." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992) (citing McDonnell Douglas, 411 U.S. at 802).

If, and only if, the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts back

8

to the defendant/employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." Burdine, 450 U.S. at 253 (quoting McDonnell Douglas, 411 U.S. at 802); Dennis v. White Way Cleaners, L.P., 119 S.W.3d 688, 694 (Tenn. Ct. App. 2003). If the defendant carries that burden, then the plaintiff must prove that the proffered reasons are pretextual. Burdine, 450 U.S. at 253 (citing McDonnell Douglas, 411 U.S. at 804). Pretext can be established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. Id. at 256.

Ms. Webb has met the first element of her *prima facie* case: She is an African-American woman and therefore a member of a protected class for purposes of a sex discrimination claim (under Title IX or the THRA) or a race discrimination claim (under the THRA). Each of the additional elements of a *prima facie* case is discussed separately below.

### 1. Whether Ms. Webb Was "Qualified" For Her Job

WCBE argues that Ms. Webb was not qualified for her job, or was not satisfactorily performing her job, on the basis of excessive absenteeism. Specifically, WCBE points to the fact that Ms. Webb missed an average of almost forty days per year over the four years beginning with the 2001–2002 school year. Ms. Webb claims she missed work because of sickness which she believes was caused by the conditions in the little gym and the girls' locker room where her office was located. Ms. Webb's supervisor testified that he was completely satisfied with her job performance but for the number of her absences. Regardless, there is no dispute that Ms. Webb was not fired for absenteeism, nor does WCBE argue that the change in her job responsibilities was a demotion resulting from unsatisfactory job performance. The Court finds that Ms. Webb has established that she was qualified for her job.

### 2. Whether Webb Suffered a Materially Adverse Employment Action

The Sixth Circuit has addressed the issue of what constitutes an actionable "adverse employment action" as follows:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Hollins v. Atlantic Co., 188 F.3d 652, 662 (6th Cir. 1999) (citation omitted; alteration in original).  In addition, "[t]he Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable."  Bowman v. Shawnee State Univ., 220 F.3d 456, 462 (6th Cir. 2000) (citing Jacklyn v. Schering Plough Healthcare Prod., 176 F.3d 921, 930 (6th Cir. 1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); Jackson v. City of Columbus, 194 F.3d 737 (6th Cir. 1999) (holding that police chief's suspension with pay was not an adverse employment action); Hollins, 188 F.3d at 662 (holding that "[s]atisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse employment action where the employee receives a merit raise"); Kocsis v. Multi-Care Management, 97 F.3d 876, 885 (6th Cir. 1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

Ms. Webb alleges that she suffered an adverse employment action when she was removed from teaching physical fitness to teaching only the health component of Lebanon High School's Lifetime Wellness curriculum.  She was not assigned to a specific classroom; instead, she had a "roaming" position that required her to gather all her teaching materials and travel between three different classrooms during the day, without use of a computer or an office.  The undisputed facts demonstrate, however, that her title did not change; her salary and benefits were not reduced; and she apparently was responsible for teaching the same number of classes and the same number of students as before.  The actions Ms. Webb complains of consist of minor inconveniences and a *de minimis* alteration in her job responsibilities.  Consequently, the Court finds Ms. Webb has failed to demonstrate that she was subjected to a materially adverse employment action.

Ms. Webb cannot establish a *prima facie* claim of discrimination because she has failed to demonstrate one of the necessary elements thereof.  The Court will nonetheless consider whether Ms. Webb has established the fourth prong of the *McDonnell Douglas* test.

### *3.     Whether Any Similarly Situation Employee Was Treated Better*

Ms. Webb alleges that "a male, white teacher [who] had far less experience (a first year teacher)" was treated better than she in that he was allowed to remain in his position as a physical fitness teacher while Ms. Webb was forced to teach health in a classroom setting.  (See Doc. No. 26, at 8.)  In her deposition, Ms.

10

Webb could not identify this other teacher other than to state that he was untenured and his last name was Brown. Ms. Webb indicated she did not know whether Mr. Brown had complained about the conditions in the little gym or had any health problems he associated therewith. There is no other evidence in the record regarding whether any *similarly situated*, non-protected employee was treated better than Ms. Webb.

The Sixth Circuit has repeatedly held that testimony consisting of "nothing more than rumors, conclusory allegations and subjective beliefs . . . [is] wholly insufficient evidence to establish a claim of discrimination as a matter of law." Mitchell v. Toledo Hosp., 964 F.2d 577, 585 (6th Cir. 1992) (refusing to consider hearsay evidence in an affidavit that was not based upon personal knowledge and did not contain facts that would be admissible in evidence). Ms. Webb clearly carries the burden of proof on the issue of disparate treatment, and she has failed to present credible, admissible evidence that any similarly situated male employee, or white employee, or any other employee at all, was treated differently or better than she.

Because Ms. Webb has failed to establish two of the four required elements of her *prima facie* case of discrimination under either Title IX or the THRA, WCBE is entitled to summary judgment in its favor as to those claims. Even if that were not the case, WCBE has also presented evidence of a legitimate, non-discriminatory reason for changing Ms. Webb's teaching duties: Lebanon High School's principal, Don Hassler, testified that the decision to reassign Ms. Webb to teaching only health classes in an actual classroom rather than in the gym was made because Ms. Webb blamed her health problems and excessive absences on the poor physical conditions of the gym and, in particular, the locker room where her office was located, and it was hoped that removing Ms. Webb from that environment would improve both her health and her attendance record. Ms. Webb has not presented any evidence suggesting that WCBE's non-discriminatory reason is pretextual or unworthy of credence.

WCBE is entitled to judgment as a matter of law and dismissal of Ms. Webb's discrimination claims on the basis that Webb cannot establish a *prima facie* case of discrimination and, even if she could, WCBE has demonstrated a legitimate, non-discriminatory reason for the action taken, which reason has not been rebutted by Ms. Webb.

### C. Plaintiff's Title IX Retaliation Claim

The Supreme Court has confirmed that Title IX prohibits retaliation and that Title IX's implied private cause of action encompasses a claim for retaliation. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, ----,

125 S. Ct. 1497, 1507 (2005). The Sixth Circuit appears not to have expressly addressed the elements of a claim for retaliation under Title IX, though most courts that have considered the issue have assumed that the same standards for a retaliation claim under Title VII apply in this context as well. See, e.g., Weaver v. Ohio State Univ., 71 F. Supp. 2d 789, 793 (S.D. Ohio 1998) (applying the same analysis to plaintiff's Title VII and Title IX retaliation claims). Thus, in order to survive summary judgment of her retaliation claim, Ms. Webb must show that (1) she engaged in "protected opposition" to Title IX discrimination or participated in a Title IX proceeding; (2) her exercise of her protected rights was known to the defendant; (3) she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (4) there was a causal connection between the protected activity and the adverse employment action. Id. (citing Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.1990) (articulating analysis applicable to Title VII retaliation claim)). As with a discrimination case, once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendants to articulate a legitimate nondiscriminatory reason for the adverse action, at which point the burden shifts back to the plaintiff to prove that the articulated reason is a pretext for discrimination. Id. (citing St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506–07, 515 (1993)).

Even assuming for purposes of this motion that Ms. Webb's complaints about the poor condition and inadequate maintenance of the little gym and girls' locker room constituted activity protected by Title IX, Ms. Webb's retaliation claim must fail because she cannot establish that she was subjected to a materially adverse employment action, for the reasons set forth above. Moreover, even if she could establish that her reassignment to teaching health in a classroom setting instead of teaching physical fitness in the gym actually constituted an adverse action, she cannot establish that the action was taken in retaliation for her complaints, particularly given the reasons offered by WCBE for the change in her job responsibilities and the unrebutted evidence regarding the schools' attempts to ameliorate the conditions in the gym and the locker room after Ms. Webb complained about them. Consequently, WCBE is entitled to summary judgment in its favor as to Ms. Webb's retaliation claim as well.

12

**IV. CONCLUSION**

Plaintiff Kim Webb has failed to establish a *prima facie* case of discrimination in violation of Title IX or the THRA, or of retaliation in violation of Title IX. Accordingly, the Court will grant WCBE's motion for summary judgment in its favor and Ms. Webb's claims will be dismissed in their entirety.

An appropriate Order will enter.

_____
Thomas A. Wiseman, Jr.
Senior U.S. District Judge